UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 22-cr-22 |
| | : | |
| LARRY EASTMAN | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

From September 2020 and continuing until at least April 5, 2021, defendant Larry Eastman engaged in a conspiracy to sell, and did in fact sell, "jammers," which are fake oxycodone pills containing fentanyl. One of the victims the defendant sold to is Diamond Lynch, who overdosed on the defendant's product twice: first in November 2020, from which she survived, and then again in April 2021, from which she died.

While it is common knowledge that these pills contain fentanyl and are dangerous, the defendant personally knew of their danger: he admitted that he himself nearly overdosed. On top of that, he was made aware of Diamond's first overdose in November 2020. Nonetheless, despite these warnings, the defendant persisted in peddling poisonous fentanyl without regard for human life. Approximately five months after Diamond's first overdose, on April 5, 2021, the defendant, working with his co-defendant sister Justice Eastman, sold Diamond yet another jammer; this time costing Diamond her life. The next morning, Diamond's mother, Paula Taylor-Lynch, who the Government anticipates will speak at sentencing, experienced a mother's worst nightmare: being told that her daughter had passed away before her—this time, due to acute fentanyl intoxication.

For the reasons herein, the government requests that the Court impose a sentence of 168 months (14 years) of incarceration.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

This was Diamond Lynch.



The youngest of six other siblings, Diamond was an inquisitive young girl who was affectionately called "eyewitness news" due to her dreams of being a news reporter one day. An advocate for those who did not have a voice, Diamond took an especial fondness to children. Perhaps then, it was no surprise that Diamond became a mom herself. Sadly, Diamond was able to celebrate only a single Mother's Day with her son, Jace. She died on April 5, 2021, after the defendant sold her a pill laced with fentanyl.

Although the defendant has admitted to causing Diamond serious bodily injury by dealing her fentanyl in November 2020, he callously refuses to acknowledge acceptance for causing her death in April 2021. As outlined below, the facts are obvious, and the Government urges the Court

2

to find (under a preponderance of the evidence standard) that Diamond's death resulted from the fentanyl that the defendant admits he sold to her. But even if the Court does not accept this, one thing is certain: Larry Eastman knew the risks associated with the fentanyl he was peddling, ignored them, and showed a complete indifference to human life—all to make some money.



A. *The Overdose Death – April 6, 2021*

On the morning of April 6, 2021, Diamond was found dead in her Washington, DC apartment. Inside of her apartment, law enforcement discovered a white powder on a glass coffee table. This powder was formed into a line, presumably for snorting.



The powder was analyzed by the DEA and found to contain fentanyl. Additionally, Diamond's autopsy determined that she died of acute fentanyl intoxication.

Diamond's cellphone was examined. Her last recorded text messages were with a contact saved as "Larry," which was later determined to be the defendant's number.





As indicated by the text messages, Diamond reaches out to Larry to acquire a jammer the night before she is found dead. Larry refers her to his "man[]." Larry then directs Diamond to 2324 Raynolds Pl SE, and that she should send money to the "$princesssjaee202" Cash App account. Diamond confirms she sent the payment, takes a ride to Larry's, and tells him that she has arrived. Other evidence also corroborates the circumstances of this transaction, such as that:

- Cash App records show that the "$princessjaee202" account is listed to Justice Eastman, Larry's sister, with the same Raynolds Pl address provided by Larry to Diamond, and that Diamond sent $30 to the account after being prompted to by Larry.

- Phone provider information show the "Larry" number is subscribed to Larry Eastman at 2324 Raynolds Place, SE, Washington D.C.

- Records from the D.C. Public Housing Authority reveal that both Larry and Justice are listed as residents on the lease at 2324 Raynolds Place, SE, Washington D.C.

- Lyft records for Diamond show that she traveled from her apartment to the address at approximately 11:09 pm, which is immediately after her text exchange with Larry.[1]



---

[1] Diamond's Lyft driver was interviewed and stated that after arriving at the location, Diamond left the car and met with a black man in his 20s, before Diamond got back into the car.

- CCTV from Diamond's apartment complex show her leaving alone.

- Call detail records for Larry show that he placed a call to Justice's phone while he was brokering the drug deal with Diamond. After the transaction, the records show that there was one additional telephone call between Larry and Justice Eastman's phone.

  B. *The Overdose Resulting in Serious Bodily Injury – November 2, 2020, and other prior conduct*

The government's investigation revealed that April 5, 2021, was not the first time the defendant had sold jammers to Diamond. Indeed, Diamond previously overdosed on November 2, 2020, approximately five months before her death. On around 11:00 pm that night, Diamond's mother and brother found her unresponsive in her apartment and called 911. EMS responded to the scene and administered two doses of Narcan (a brand name of the drug Naloxone, which is a medication designed to rapidly reverse an opioid overdose), to which she responded positively. Diamond was admitted to the hospital, and the attending physician informed authorities that her overdose was most likely caused by fentanyl.

Evidence shows that Larry was responsible for this overdose:

- Call detail records show that Diamond called Larry at 9:01 pm that night.

- Cash app records show that at 9:06 pm, Diamond sent $60 to the "Michelle24" Cash App account, which is also subscribed to Justice Eastman with the same Raynolds Pl address. It should be noted that Justice Eastman's middle name is Michelle.

- Diamond's brother saw several small blue pills in Diamond's apartment, which he subsequently disposed of.

- Diamond's mother had texted Diamond just a couple of days before the overdose about where she was getting the pills from, and Diamond responded, "Larry."

7



- After the overdose, Diamond's mother held onto Diamond's phone while she was in the hospital, and she noted that the screen showed a Cash App notification from "Michelle24" requesting "$213 for Larry." Cash App records corroborate this as it shows the request was made on November 5, 2020. The screen also reflects a missed Face Time call from a number ending in 7528, which is the defendant's number.



- Diamond's friend communicated with Larry after Diamond's overdose. She stated to investigators that after the November 2 overdose, she had a conversation in which she asked Larry if he had given Diamond "fake percs", which led to her overdose. She stated that Larry did not respond directly but said that "he didn't get them all from the same person" so he didn't know what they were.[2]

C. *Arrest and Procedural History*

On January 18, 2022, a three-count indictment was returned against Larry and Justice Eastman charging them with conspiracy to distribute fentanyl (from September 2020 to at least

---

[2] Diamond's friend also admitted to purchasing marijuana from Larry on this same occasion.

April 5, 2021), distribution of fentanyl resulting in serious bodily injury (from on or about October 31, 2020, to November 1, 2020); and distribution of fentanyl resulting in death (April 5, 2021).

As part of the investigation, investigators searched various accounts associated with both Larry and Justice Eastman. In these accounts, investigators found additional evidence of the defendant's distribution of these pills, such as the photos below.

 

On January 26, 2022, both Larry and Justice Eastman were arrested. From Larry's Maryland residence (at the time of his arrest, the defendant had moved out of the Raynolds Pl address and into his Maryland residence with his girlfriend) agents seized three large bags of marijuana and two bags of pills (including 80 fake oxycodone pills containing fentanyl and 19 pills of counterfeit Xanax), and cash, from on top of the kitchen counter.



On February 8, 2023, the defendant pled guilty to Count One of the Indictment pursuant to a plea agreement. Notably, as part of the plea agreement, while the defendant agreed that he was "responsible for a conspiracy to distribute and possess with intent to distribute a mixture and substance containing a detectable amount of fentanyl to a female victim, on or about September 2020 to at least April 5, 2021, and that serious injury resulted from the use of the substance by the victim," and he also agreed that "he helped distribute fentanyl to the female victim on April 5, 2021 and that the female victim died on April 6, 2021 due to acute fentanyl intoxication," he "disputes that there is sufficient evidence to prove that the fentanyl he helped distribute caused the victim's death." Plea Agr. at 2-3; *see also* Proffer of Evidence at ¶¶ 7-8.

More simply stated, while Larry admitted to selling fentanyl to Diamond in November 2020 and that this fentanyl seriously injured her, he disputes that the fentanyl he sold to Diamond in April 2021 caused her death. The Government urges the Court to reject the defendant's baseless claim, apply a preponderance of the evidence standard, and find that the defendant is responsible

11

for causing Diamond Lynch's death and to take these factors into account at sentencing.[3]

## II.   ARGUMENT

"The Court must begin the sentencing process by correctly calculating the applicable range under the U.S. Sentencing Guidelines." *United States v. Abu Khatallah*, 314 F. Supp. 3d 179, 184 (D.D.C. 2018). "Throughout this Guidelines calculation process, the Court is not confined to the jury's factual findings or even to the trial record. Rather, the Court may consider all of a defendant's 'relevant conduct.'" *Id.* at 185. "Relevant conduct need only be established by a preponderance of the evidence. *Id.* (citing *United States v. Bell*, 795 F.3d 88, 103 (D.C. Cir. 2015)).

As explained above, as part of the plea agreement, Larry admitted to selling fentanyl to Diamond for both the November 2020 and April 2021 incidents, and that the fentanyl he sold to Diamond in November 2020 caused her seriously bodily injury. However, he disputes that the fentanyl he sold to her in April 2021 caused her death. This is pure balderdash. The defendant's "jammer" is what caused Diamond's death. As laid out in the factual background, an overwhelming mountain of evidence suggests that Larry sold Diamond the jammer that caused her death. Indeed, investigators were unable to locate any other messages in Diamond's phone around the time of her death that concerned acquiring drugs, except for ones with Larry Eastman. Add in the long history of Larry being Diamond's dealer[4], and the government has proven far beyond

---

[3] U.S.S.G. § 2d1.1(a)(2) states that the offense level is 38 if "the offense of conviction establishes that death or serious bodily injury resulted from the use of the substance." As a result, the offense level for the defendant is level 38 (before acceptance of responsibility) irrespective if the Court finds that Larry caused Diamond's death, given that Larry has already pled to facts supporting the fact that he caused Diamond seriously bodily injury. For this reason, it seems especially odd that he is not taking responsibility for causing Diamond's death.

[4] Lyft records revealed that Diamond took Lyft ten times between September and December 2020 to travel to Raynolds Pl. Historic cell site location information for Larry Eastman's phone

mere preponderance that Larry Eastman caused Diamond Lynch's death.

Given, as explained in footnote 3, that the base offense level is 38 regardless of if the Court finds that Larry caused Diamond's death, the defendant's recalcitrance in acknowledging his role in causing Diamond's death makes no difference in terms of the Guidelines calculation. It does make a difference, however, to Diamond's grieving family, who is looking for closure.

## IV.  SENTENCING FACTORS

Pursuant to 18 U.S.C. § 3553(a), the court shall impose a sentence that is sufficient, but not greater than necessary, to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" "to afford adequate deterrence to criminal conduct;" "to protect the public from further crimes of the defendant;" and to "provide the defendant with needed educational or vocational training." 18 U.S.C. § 3553(a)(2). In addition, the Court must also consider "the nature and circumstances of the offense and the history and characteristics of the defendant;" the types of sentences available, the Sentencing Guidelines; any pertinent policy statements; the need to avoid unwarranted sentence disparities; and the need to provide restitution to any victims. *Id.* § 3553(a).

The government recommends a sentence of 168 months (14 years) of incarceration. The defendant repeatedly sold fentanyl, an incredibly dangerous and lethal substance, to Diamond. Worse yet, despite nearly overdosing himself and knowing that Diamond had overdosed, the defendant continued to sell her fentanyl. Contrary to the defendant's statement that he was "help[ing] her out with her addiction," PSR at ¶38, the defendant instead contributed to her death.

---

shows that it, and therefore likely Larry, was present in the area of Raynolds Place on each of these occasions.

13

For these reasons, the government's recommended sentence should be imposed.

### 1. The Nature, Circumstances, and Seriousness of the Offense

There is an ongoing, widespread, and lethal drug epidemic. At this point in the opioid epidemic, it is common knowledge that fentanyl kills. According to the DEA, "Fentanyl is a Schedule II controlled substance that is similar to morphine but about 100 times more potent. . . . Because of its potency and low cost, drug dealers have been mixing fentanyl with other drugs including heroin, methamphetamine, and cocaine, increasing the likelihood of a fatal interaction. . . . Two milligrams of fentanyl can be lethal depending on a person's body size, tolerance and past usage."[5] According to the CDC, overdose deaths in the United States continue to rise, with more than 80 percent of such deaths attributed to synthetic opioids, primarily fentanyl.[6] In 2021, the United States set a record high, with drug overdose deaths toppling 100,000 and fentanyl causing nearly two-thirds of these deaths.[7] According to Howard University Hospital, the District has close to 400 opioid related deaths per year – contributing to the third highest opioid mortality rate in the country with 34.7 deaths per 100,000 persons compared to the national average of 14.6 deaths. The dangers of fentanyl cannot be overstated. As the DEA's recent "One Pill Can Kill Campaign" highlights, DEA laboratory testing indicates that that six out of ten fentanyl-laced fake prescription pills analyzed contain a potentially lethal dose of fentanyl.[8] Indeed, fentanyl is now the leading cause of death for Americans ages 18 to 49.[9]

---

[5] https://www.dea.gov/resources/facts-about-fentanyl
[6] https://www.cfr.org/in-brief/us-fentanyl-crisis-what-know
[7] https://www.cnn.com/2021/11/17/health/drug-overdose-deaths-record-high/index.html
[8] https://www.dea.gov/onepill
[9] https://www.washingtonpost.com/nation/2022/11/03/fentanyl-opioid-epidemic/

Sadly, Diamond is among these statistics. Her death, along with the hundreds of others in just the District this year, makes clear the seriousness of this offense. But there are particularly aggravating circumstances in this case. As explained above, the defendant was put on notice that his drug-dealing was causing tangible harm. Indeed, Diamond's friend explained that after Diamond's November 2, 2020, overdose, she confronted Larry about his selling of bad drugs to Diamond. Yet, instead of taking stock of the harm he was causing, the defendant persisted in selling to Diamond, ultimately resulting in this tragedy.

Further, when the defendant was arrested on January 26, 2022, ten months after Diamond's death, law enforcement still found 80 "jammers" at his residence. Ultimately, during the course of the conspiracy, law enforcement seized 314 pills from Defendant Eastman's two residences, which by DEA estimates, is enough pills to cause 188 deaths (6/10 pills contain a lethal dose).[10] This once again shows the callousness of the defendant. Despite knowing of Diamond's overdose, and despite causing her death, the defendant continued to deal. Defendant could very well be responsible for the injuries and deaths of untold others.

### 2. The Defendant's History and Characteristics

To his credit, the defendant has no prior criminal history. Indeed, it appears from the defendant's Presentence Report that he is a very intelligent young man, having spent some time in college after graduating high school in almost the top decile of his class. *See* PSR at ¶ 89-90

---

[10] Law enforcement executed two search warrants at 2324 Raynolds Pl SE on September 1 and December 5, 2021. 204 pills were in the residence on September 1, and 22 pills on December 5. Eight pills were in the residence when Justice Eastman was arrested on January 26, 2022, bringing the total number of recovered pills to 314. Additionally, during the two search warrant executions, seven firearms were recovered from the residence. While the government is not asserting that all these pills, or any of these guns, were possessed by the defendant, it is fair to say that the defendant resided at a residence that was filled with guns and drugs.

15

(noting the defendant's class rank is 23 out of 199 students). As a result, given the defendant's intelligence, he should have known about the dangers of his pill-dealing. But in this case, he was personally made aware that the pills he was dealing were causing harm to others, including Diamond herself, at least five months before her death. In fact, the defendant admits in the PSR that he himself nearly overdosed on pills in 2020. *See* PSR at ¶ 84. Yet, despite these warnings, the defendant persisted in selling these pills, leading to this tragedy. As a result, it appears that despite knowing the risks, the defendant disregarded it to enrich himself. As the photos below make clear, Larry's "motivation" was cash, not any desire to help people, and certainly not any desire to help Diamond. Rather than using his intelligence for a positive purpose or to make money legitimately, Larry put his efforts into dealing a poison that ultimately killed Diamond.



### 3.     The Need to Promote Respect for the Law and Deterrence

Given the catastrophic impact of drugs on our community, the government's recommended sentence in this case is warranted. Individuals who engage in this type of behavior must understand that their conduct is unacceptable. Indeed, Congress found that distribution

16

resulting in serious bodily injury or death to be such a serious offense that it imposed a 20-year mandatory minimum for each offense. Here, defendant did both. Based on his first-time offender status, the government agreed to drop the mandatory minimum and request a bottom of the Guidelines sentence, but the severity of the defendant's conduct and the need for deterrence is easily seen in Congress's passing of a 20-year mandatory minimum for both of Larry's offenses—the distribution resulting in serious bodily injury and the distribution resulting in death.

### 4.   Other factors

The government's recommended sentence is also justified to protect the public from the defendant. It would also give the defendant ample time to pursue further educational and vocational training and participate in other programs that will hopefully prevent him from reoffending.

## V.   CONCLUSION

For the foregoing reasons, the government recommends that the Court sentence the defendant to 168 months (14 years) of incarceration.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
DC Bar No. 481052

By:   */s/ Andy Wang*
Andy T. Wang
Assistant United States Attorney
DC Bar No. 1034325
601 D Street, NW
Washington, DC 20530
(202) 870-4940
Andy.wang@usdoj.gov